**TOBY MARTIN, JR.**                    **CIVIL ACTION**

**VERSUS**                              **NO. 16-14717 c/w 17-1823**

**L & M BOTRUC RENTAL, LLC, et al.**    **SECTION: "G" (1)**

## ORDER

Before the Court are Plaintiff Toby Martin's ("Plaintiff") "Motion for Partial Summary Judgment and/or Motion to Compel on the Issue of Cure and, in the Alternative, Motion for Expedited Trial on the Issue of Cure"[1] and Defendant L&M Botruc Rental, LLC's ("L&M") "Motion to Appoint Independent Medical Expert."[2] In this litigation, Plaintiff alleges that while working on the M/V C-TRUC 8, he was struck in the back by a crane hook, causing serious injuries to his spine.[3] Plaintiff filed the instant motion for summary judgment to request that L&M pay cure for Plaintiff's thoracic spinal fusion surgery.[4] In opposition, L&M argues that genuine issues of fact remain regarding whether the accident occurred on L&M's vessel and whether the surgery is medically necessary.[5] L&M then filed a motion to appoint an independent medical expert.[6] In opposition to the motion to appoint an expert, Plaintiff argues that an independent expert is

---

[1] Rec. Doc. 86.

[2] Rec. Doc. 121.

[3] *Id.* at 2.

[4] Rec. Doc. 115.

[5] Rec. Doc. 117.

[6] Rec. Doc. 121.

unnecessary.[7] Having considered the motions, the memoranda in support and opposition, the record, and the applicable law, the Court will deny the motion for summary judgment, grant the motion for an expedited trial on the issue of cure, and grant the motion to appoint an independent medical expert.

## I. Background

In the Complaint, Plaintiff asserts that on or about December 25, 2015, he worked as a deckhand on L&M's vessel, the M/V C-TRUC 8.[8] Plaintiff alleges that he was "attempting to attach the mud hose from the jack-up vessel, [the] HERCULES 264, to the crane hook of the HERCULES 264 when he was suddenly struck in the back while on the deck of the M/V C-TRUC 8 by the crane hook."[9] Plaintiff contends that as a result of the incident, he has "serious, disabling and permanent injuries to his spine."[10]

On September 15, 2016, Plaintiff filed suit in this Court against L&M under the Jones Act and general maritime law, raising claims of negligence and unseaworthiness.[11] On November 14, 2018, Plaintiff filed the instant "Motion for Partial Summary Judgment and/or Motion to Compel on the Issue of Cure and, in the Alternative, Motion for Expedited Trial on the Issue of Cure" against L&M.[12] On November 27, 2018, L&M filed an opposition.[13] With leave of Court, Plaintiff

---

[7] Rec. Doc. 125.

[8] Rec. Doc. 1 at 2.

[9] *Id.*

[10] *Id.* at 3.

[11] *Id.*

[12] Rec. Doc. 115.

[13] Rec. Doc. 117.

filed a reply on December 17, 2018.[14] On December 2, 2018, L&M filed a "Motion to Appoint an Independent Medical Expert."[15] On December 11, 2018, Plaintiff filed an opposition.[16] On December 19, 2018, the Court heard oral argument on both motions.[17]

## II. Parties' Arguments

### A.  *The Motion for Summary Judgment*

#### 1.  **Plaintiff's Arguments in Support of the Motion for Summary Judgment**

Plaintiff urges the Court to grant summary judgment finding that he is entitled to cure from his former employer L&M.[18] Plaintiff argues that "'[g]enerally an employer owes maintenance and cure to any seaman in its employ who suffers an injury while in the service of a vessel regardless of fault.'"[19] Plaintiff insists that "'[t]he right terminates only when maximum cure has been obtained. Maximum cure is achieved when it is probable that further treatment will result in no betterment of the seaman's condition.'"[20] Plaintiff alleges that if there is any dispute over whether maximum cure has been obtained, "[a]mbiguities or doubts regarding the entitlement to maintenance and cure are to be resolved in the seaman's favor."[21]

---

[14] Rec. Doc. 129.

[15] Rec. Doc. 121.

[16] Rec. Doc. 125.

[17] Rec. Docs. 122, 126.

[18] Rec. Doc. 115-1 at 1.

[19] *Id.* at 8 (quoting *Hale v. Omega Protein, Inc.*, No. 10-282, 2011 WL 2932145, at *1 (E.D. La. July 19, 2011)).

[20] *Id.* at 9 (quoting *Domingue v. Offshore Serv. Vessels, LLC*, No. 08-4668, 2010 WL 936295, at *2 (E.D. La. Mar. 11, 2010)) (internal citations omitted).

[21] *Id.* at 10 (citing *Domingue*, 2010 WL 936295, at *2).

Plaintiff asserts that since the accident, he has "consistently complained of thoracic spine pain, in addition to lumbar spine pain.[22] Plaintiff alleges that following his injuries, he began treatments with a neurosurgeon named Dr. Donald Dietze ("Dr. Dietze").[23] Plaintiff contends that on November 3, 2016, Dr. Dietze diagnosed him with "'lumbar discogenic pain syndrome,' as well as 'thoracolumbar back pain,' both of which he related to the work accident."[24] Plaintiff contends that L&M's medical expert, Dr. Deepak Awasthi ("Dr. Awasthi"), examined him on July 6, 2017.[25] Plaintiff asserts that Dr. Awasthi "'did not see any need for future surgical intervention,'" but L&M still authorized Plaintiff's lumbar surgery for October 25, 2017.[26]

Plaintiff alleges that after the lumbar surgery, he experienced temporary relief but then "increased thoracic pain" returned.[27] Plaintiff states that Dr. Dietze ordered a course of injections as an attempted treatment.[28] Plaintiff asserts that though the injections alleviated his pain for a while, he eventually returned to his normal pain levels and "continues to suffer with severe thoracic pain, in addition to lumbar spine pain."[29] Plaintiff avers that Dr. Dietze has now recommended thoracic spinal fusion surgery.[30] Plaintiff insists that "[d]espite Complainant's repeated attempts and requests for authorization of said thoracic surgery via email correspondence, [L&M] has

---

[22] Id.

[23] Id.

[24] Id. at 3.

[25] Id.

[26] Id. at 3–4.

[27] Id. at 4–5.

[28] Id.

[29] Id. at 7.

[30] Id.

consistently and repeatedly failed to authorize said treatment even in light of its obligation to furnish Complainant cure under the general maritime law."[31]

Plaintiff argues that "there is no dispute amongst physicians that [Plaintiff's] lumbar and thoracic injury is related to the accident on December 25, 2015."[32] Plaintiff asserts that even Dr. Awasthi has acknowledged that "the work related accident involved herein was the cause of a lumbar soft tissue injury…[and] that she[sic] same findings and conclusions he applied to Complainant's lumbar spine similarly apply to the thoracic spine."[33] Plaintiff further asserts that Jay Ougel ("Ougel"), who works for L&M as a safety and environmental manager, has also admitted there is no other cause for Plaintiff's injuries.[34] Based on these admissions, Plaintiff insists that the central issue in this motion is not whether the alleged incident was the cause of Plaintiff's injuries, but "the medical necessity of the thoracic spine surgery recommended on multiple occasions by Complainant's neurosurgeon, Dr. Dietze."[35]

Plaintiff insists that L&M "has repeatedly refused to provide [Plaintiff] with appropriate cure in accordance with Defendant's obligation under the maritime law."[36] Plaintiff contends that L&M's refusal centers around its assertion that during Dr. Dietze's deposition, Dr. Dietze "testified that Mr. Martin's thoracic spine condition had reached maximum medical improvement."[37] Plaintiff avers that Dr. Dietze initially did not recommend surgery because "'[h]e sought to avoid

---

[31] *Id.*

[32] *Id.* at 12.

[33] *Id.* at 11–12.

[34] *Id.* at 12.

[35] *Id.* at 13.

[36] *Id.*

[37] *Id.* at 13.

recommending thoracic surgery for as long as possible, but was unable to do so.'"[38] Plaintiff also asserts that though Dr. Dietze made the statement regarding maximum medical improvement, the deposition occurred "*before* [Plaintiff] even underwent thoracic spinal injections and prior to Dr. Dietze's ordering of an additional thoracic MRI, which was ordered after said injections failed to provide [Plaintiff] any significant relief. Following said failed injections, Dr. Dietze was forced to alter his initial treatment plan for [Plaintiff], ultimately recommending that he undergo thoracic spinal fusion surgery."[39]

Plaintiff also asserts that Dr. Awasthi's opinion that thoracic surgery is not required is "imprecise and fail[s] to offer Defendant any reasonable support in furtherance of its argument."[40] Plaintiff alleges that Dr. Awasthi "has never indicated that he believes [Plaintiff] has reached maximum medical improvement in regards to his thoracic spine in any of his reports, addendums or during his deposition, which was taken on September 10, 2018…In fact, in his Addendum to his July 2, 2018 Report, Dr. Awasthi even suggested an additional thoracic MRI study using a 3 Tesla magnet."[41]

Plaintiff relies on the Supreme Court case *Vaughan v. Atkinson*,[42] and its progeny to argue that when there are "ambiguities or doubts regarding the entitlement to maintenance and cure, [they] should be resolved in favor of the seaman."[43] Plaintiff argues that in *Gouma v. Trident Seafoods, Inc.*, a case decided by a federal district court in Washington, the court followed *Vaughan*, "honor[ing] the

---

[38] *Id.*

[39] *Id.*

[40] *Id.* at 14.

[41] *Id.*

[42] 369 U.S. 527 (1962).

[43] *Id.* at 14 (citing *Domingue*, 2010 WL 936295, at *2).

opinion of Plaintiff's treating physician over that of the Defendants' second medical opinion physician."[44] Plaintiff proffers that, similarly, Dr. Awasthi's opinions "should carry very little weight compared to that of [Plaintiff's] treating neurosurgeon, Dr. Dietze.."[45] Therefore, Plaintiff urges the Court to grant summary judgment ordering cure or, alternatively, expedite trial on the issue of cure.[46] Plaintiff also requests that the Court award "punitive damages arising out of Defendant's unreasonable, arbitrary, and capricious failure to provide Complainant with necessary cure herein."[47]

### 2.    L&M's Arguments in Opposition to the Motion for Summary Judgment

L&M argues that the Court should deny summary judgment because genuine issues of material fact are in dispute on "whether the alleged unwitnessed accident occurred, whether Plaintiff injured his thoracic spine while working for L&M," whether thoracic surgery is medically necessary, and whether the surgery is palliative care.[48] L&M also contends "that L&M has paid all maintenance and cure due to [Plaintiff] since August 19, 2016 due to his low back complaints."[49]

L&M first asserts that there is a genuine dispute over whether the alleged accident actually occurred on the M/V C-TRUC 8.[50] L&M presents the deposition statements of several employees

---

[44] No. C07-1309, 2008 WL 2020442, at *1 (W.D. Wash. Jan. 11, 2008).

[45] *Id.* at 14–15.

[46] *Id.* at 15–16.

[47] *Id.* at 2.

[48] Rec. Doc. 117 at 1.

[49] *Id.*

[50] *Id.*

who allege that they were present on the deck of the M/V C-TRUC 8 on December 25, 2015.[51] L&M avers that Marlon Oliva ("Oliva") and Daniel Hubble ("Hubble") "did not see Plaintiff get hit by the hook" despite being in the same area, and the crane operator, Lincoln Celestine, "had no knowledge of this alleged accident."[52] L&M goes on to allege that Oliva, a fellow deck hand, states that he was responsible for hooking the safety line to the crane hook, and if this is true, "it is impossible for the crane hook [to] have hit Plaintiff."[53] Finally, L&M contends that after the incident, Plaintiff continued to work and did not report the incident until later that night after he "took a shower and laid in his bunk."[54]

L&M asserts that Plaintiff was examined on December 26, 2015, by a physician's assistant and "[t]here was no swelling, no abrasions and no bruises. X-rays of the lumbar were normal."[55] L&M alleges that "Plaintiff was not given any prescription medication, Plaintiff was released to return to work, and that was the only medical treatment he sought until August, 2016."[56] L&M asserts that Plaintiff returned to L&M for his next shift in January 2016 and did not complain of any pain.[57] L&M also asserts that when Plaintiff left L&M in March 1, 2016 to work for Central Gulf Towing, LLC, Plaintiff passed a physical with no objective findings of spinal injuries.[58]

---

[51] *Id.* at 2–3.

[52] *Id.* at 3.

[53] *Id.*

[54] *Id.*

[55] *Id.* at 3–4.

[56] *Id.* at 4.

[57] *Id.*

[58] *Id.*

L&M alleges that Plaintiff underwent several examinations and scans in August and September 2016 where lumbar issues were addressed, but there was never a record of thoracic pain.[59] L&M states that even after Plaintiff started visiting Dr. Dietze in November 2016, Dr. Dietze did not believe that Plaintiff required thoracic surgery, only lumbar surgery.[60] L&M contends that throughout all of Dr. Dietze's examinations, the only record of a thoracic issue was a pre-existing condition called Scheuermann's kyphosis.[61] L&M presents Dr. Dietze's deposition testimony, where he stated that he would not recommend thoracic surgery for Plaintiff and that Plaintiff had reached maximum medical improvement.[62] L&M insists that "[t]here has been essentially no change in Plaintiff's thoracic spine since Dr. Dietze's deposition to justify thoracic surgery related to the alleged injury."[63] L&M also contends that Dr. Awasthi did not find that Plaintiff has an injury to his thoracic spine and would not recommend thoracic surgery.[64]

L&M presents several district court cases from the Eastern District of Louisiana to support the assertion that an employer's obligation to provide maintenance and cure "expires at the point of maximum cure."[65] L&M contends that "'[m]aximum medical cure' is reached when the seaman recovers from the injury, the condition permanently stabilizes or cannot be improved further. If the seaman thereafter needs attention to maintain his improvement at the maximum, to assist him in recovery from relapses, or to restrain the progress of the disease, the shipowner is not bound to provide

---

[59] *Id.* at 5–6.

[60] *Id.* at 8–10.

[61] *Id.* at 8.

[62] *Id.*

[63] *Id.* at 10.

[64] *Id.*

[65] *Id.* at 14.

that."[66] L&M argues that any treatment beyond maximum medical cure is mere palliative care.[67] L&M asserts that Plaintiff's request for thoracic surgery would not improve his condition and would only serve to address his ongoing pain.[68] Thus, L&M alleges that thoracic surgery is palliative care not required under maintenance and cure.[69]

For the above reasons, L&M argues that genuine issues of material fact remain on "whether Plaintiff reached maximum cure, whether the contemplated [] thoracic surgery is related to the alleged unwitnessed accident on 12/25/15, whether the surgery is required to ameliorate a long-standing, pre-existing condition, and whether the contemplated treatment is mere palliative care outside the realm of maintenance and cure."[70] Therefore, L&M urges the Court to deny summary judgment.

### 3. Plaintiff's Arguments in Further Support of the Motion for Summary Judgment

In reply, Plaintiff asserts that L&M fails to raise a genuine issue of fact regarding whether Plaintiff was injured on the M/V C-TRUC 8.[71] First, Plaintiff alleges that Hubble and Oliva's testimonies are not accurate descriptions of what occurred because Hubble's view of the accident was obscured and Oliva admitted in his deposition that he did not actually witness the accident.[72] Plaintiff contends that this does not create an issue of fact about whether the accident occurred.[73] Plaintiff insists that "[a]ll it proves is that neither of these witnesses saw Mr. Martin get struck by the

---

[66] *Id.* at 15 (citing *Baucom v. Sisco Stevedoring, LLC*, 506 F. Supp. 2d 1064, 1074-75 (S.D. Ala. 2007)).

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] *Id.* at 16.

[71] *Id.*

[72] Rec. Doc. 127-2 at 2.

[73] *Id.*

crane hook at the time of the incident."[74] Plaintiff also asserts that there is no genuine issue of fact on whether Plaintiff's injuries arose from the incident.[75] Plaintiff contends that both Dr. Dietze and Dr. Awasthi "have related [Plaintiff's] injuries to the trauma associated with the accident involved herein."[76] Further, Plaintiff presents the testimony of radiologists Dr. Neel Gupta and Dr. Wendy Gervais, asserting that both doctors "found that there was a significant and detrimental change to [Plaintiff's] lumbar spine between June of 2015 and August of 2016."[77] Plaintiff asserts that these expert opinions show that there is no issue of fact that his injuries are the result of the December 25 incident, and therefore, summary judgment should be granted.

**B.    *Motion to Appoint Independent Expert***

**1.    L&M's Arguments in Support of the Motion for Independent Expert**

L&M urges the Court to "appoint an independent medical expert, specifically a neurosurgeon, to assist the court in determining the appropriateness, necessity, and reasonableness of thoracic spine surgery for Plaintiff Toby Martin, Jr."[78] L&M asserts that an independent expert is needed because Dr. Awasthi and Dr. Dietze have divergent opinions on Plaintiff's need for thoracic spinal surgery.[79] L&M alleges that Dr. Awasthi examined plaintiff on December 15, 2016 and again on July 2, 2018.[80] L&M contends that "[p]rior to and after the July 2, 2018 visit, Dr. Awasthi's opinion had not changed and he still does not recommend any surgical intervention, especially in the thoracic

---

[74] *Id.* at 3.

[75] *Id.*

[76] *Id.*

[77] *Id.* at 5.

[78] Rec. Doc. 121-1 at 1.

[79] *Id.*

[80] *Id.* at 2.

spine."[81] L&M then presents the opinions of Dr. Dietze, a neurosurgeon chosen by Plaintiff's attorney.[82] L&M alleges that Dr. Dietze testified on April 13, 2018 that Plaintiff had reached maximum medical improvement, but now has changed his opinion to recommend surgery.[83]

L&M contends that "[b]ased upon the divergent opinions of Plaintiff's and Defendant's experts, as well as the change in opinion from Plaintiff's own expert, there is an issue as to whether Plaintiff is 'cured' and whether additional 'cure' is owed."[84] L&M argues that under Federal Rule of Evidence 706, the Court can appoint an expert witness as "an equitable and forward-looking technique for promoting [a] fair trial."[85] L&M cites a case previously decided by another district judge in the Eastern District of Louisiana, wherein the judge "appointed an independent medical expert, specifically an orthopedic surgeon, due to the divergent views of Plaintiff's and Defendant's experts."[86] L&M requests that similarly here, the Court should appoint an independent medical expert to examine Plaintiff and determine the need for thoracic spinal fusion surgery.

### 2. Plaintiff's Arguments in Opposition to the Motion for Independent Expert

In opposition, Plaintiff argues that "the appointment of a medical expert under Rule 706 is not only unnecessary, but also contrary to the general maritime law."[87] First, Plaintiff contends that under general maritime law, "maintenance and cure are to be liberally construed to benefit the seaman" and "[t]he law set forth in *Vaughan* is clear – ambiguities or doubts regarding entitlement to

---

[81] *Id.*

[82] *Id.* at 3.

[83] *Id.*

[84] *Id.* at 3–4.

[85] *Id.* at 4.

[86] *Id.*

[87] Rec. Doc. 125.

maintenance and cure are to be resolved in the seaman's favor."[88] Plaintiff then asserts that court appointment of a neutral expert is discretionary and "should be reserved for exceptional cases in which the ordinary adversary process does not suffice."[89] Plaintiff argues that "Courts should not appoint expert witnesses under Rule 706 in order to aid a litigating party."[90]

Plaintiff contends that "the issues surrounding [Plaintiff's] need for thoracic spine surgery are not excessively complex or confusing to necessitate the appointment of a *third* neurosurgeon to render an additional and unnecessary opinion as to [Plaintiff's] medical treatment, especially considering the fact that this matter is set to be tried as a bench trial."[91] Plaintiff cites *Brown v. Cenac Towing Co.*,[92] a case decided by another district court judge in the Eastern District of Louisiana, for the proposition that an independent medical expert is unnecessary when a case is "'no different tha[n] any other personal injury case decided by this Court" and "[t]he Court is perfectly capable of making [this] determination."[93]

Plaintiff argues that this case is like *Brown*, and "appointing an additional medical expert is unnecessary herein simply because there is conflicting medical testimony from two independent physicians – a scenario that is commonplace in maritime cases such as this."[94] Therefore, Plaintiff argues that the Court should deny the motion to appoint an independent medical expert.[95]

---

[88] *Id.* at 2 (*Domingue*, 2010 WL 936295, at *2).

[89] *Id.* at 3 (quoting *Hunt v. R & B Falcon Drilling USA, Inc.*, No. 99-1685, 2000 WL 1838327, at *1 (E.D. La. Dec. 12, 2000)).

[90] *Id.* (citing *Hughes v. Lavender*, No. 10-674, 2011 WL 2550740, at *1 (S.D. Ohio June 23, 2011)).

[91] *Id.* at 4.

[92] No. 09-00105, 2009 WL 3378658, at *2 (E.D. La. Oct. 14, 2009.

[93] Rec. Doc. 125 at 4 (quoting *Brown*, 2009 WL 3378658)).

[94] *Id.* at 5.

[95] *Id.*

Alternatively, if the Court grants the motion to appoint an independent expert, Plaintiff nominates Dr. Peter Lietchy as the neutral expert, and Plaintiff would like the Court to "limit the appointed neurosurgeon's opinions to concern only whether the surgical recommendation offered by Dr. Dietze is an appropriate course of treatment for Mr. Martin."[96]

## III. Legal Standard

### A. *Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[97] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[98] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[99] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[100] The nonmoving party may not rest upon the pleadings, but must identify specific facts in

---

[96] *Id.*

[97] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[98] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[99] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[100] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[101]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[102] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[103] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[104]

In doing so, the nonmoving party may not rest upon mere allegations or denials in its pleadings, but rather must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[105] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a

---

[101] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[102] *Celotex*, 477 U.S. at 323.

[103] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (citing *Little v. Liquid Air Corp.*, 939 F.2d 1293, 1299 (5th Cir. 1991)).

[104] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[105] *Morris*, 144 F.3d at 380 (citing *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992); *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

scintilla of evidence."[106] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[107]

**B.    *Appointment of an Independent Medical Expert***

Federal Rule of Evidence 706 ("FRE 706") states that:

> On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing. But the court may only appoint someone who consents to act.

The Fifth Circuit has acknowledged that FRE 706 "contemplates the appointment of an expert to aid the court," [108] and "[t]he appointment of experts is left to the discretion of the district court."[109] Because the standard is discretionary, there are no specific factors that courts are required to consider. The Fifth Circuit has noted, however, that an expert appointment should not be used for the "sole benefit of a party."[110]

## IV. Analysis

As stated more fully above, Plaintiff argues that the Court should grant summary judgment finding that he is entitled to cure because his injury was a result of the incident on the M/V C-

---

[106]  *Little*, 37 F.3d at 1075.

[107] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987).

[108] *Hannah v. United States*, 523 F.3d 597, 600 (5th Cir. 2008); *see also Fugitt v. Jones*, 549 F.2d 1001, 1006 (5th Cir. 1977) ("[W]e note that Rule 706(a) of the Federal Rules of Evidence confers on a district court the discretionary power to appoint an expert witness on the court's own motion or on the motion of any party.").

[109] *Carson v. Aguilera*, 36 F.3d 90 (5th Cir. 1994).

[110] *Borden v. United States*, 537 F. App'x 570, 575 (5th Cir. 2013); *see also Hannah*, 523 F.3d at 600 (finding no abuse of discretion in denying expert appointment where defendant sought expert for his own benefit).

TRUC 8 and his thoracic surgery is medically necessary.[111] In opposition, L&M argues that genuine issues of fact remain on whether Plaintiff reached maximum cure, whether the thoracic surgery is related to the alleged accident, and whether surgery would only be palliative care outside the realm of maintenance and cure.[112] L&M also requests that the Court appoint an independent medical expert to resolve the conflict over whether thoracic spinal fusion is medically necessary for Plaintiff.[113] Plaintiff opposes this request, asserting that the Court is capable of resolving the dispute based on the facts currently before it.[114] The Court will address each issue in turn.

## A.      *Maintenance and Cure*

Maintenance and cure is an old remedy under general maritime law that is implicit in the contractual relationship between the seaman and his employer and designed to assist in the recovery of a seaman upon injury or illness sustained while in the service of the ship.[115]  "When there are ambiguities or doubts [as to a seaman's right to receive maintenance and cure], they are to be resolved in favor of the seaman."[116]

In *Barto v. Shore Const., L.L.C.*, the Fifth Circuit restated the limits of cure, declaring that:

> Cure involves the payment of therapeutic, medical, and hospital expenses not otherwise furnished to the seaman ... until the point of "maximum cure." Maximum cure occurs "when it appears probable that further treatment will result in no betterment of the seaman's condition." "Thus, where it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is proper to declare

---

[111] Rec. Doc. 115-1.

[112] Rec. Doc. 117.

[113] Rec. Doc. 121.

[114] Rec. Doc. 125.

[115] *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979).

[116] *Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79 (5th Cir. 1990) (quoting *Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962)).

that the point of maximum cure has been achieved." It logically follows that, "when a particular medical procedure is merely palliative in nature or serves only to relieve pain and suffering, no duty to provide payments for cure exists." [117]

To determine when cure is due, the Fifth Circuit has consistently followed the *Vaughan* standard of construing doubts and ambiguities in favor of the seaman.[118] However, the Fifth Circuit has also noted that "it is crucial to ensure that the rule stated in *Vaughan*, regarding the existence of ambiguities and doubts, is applied correctly."[119] The court then articulated the idea that "[a] determination to terminate a seaman's right to maintenance and cure must be unequivocal."[120] Thus, when there are conflicting diagnoses and prognoses from various physicians, there remains an issue to be determined by the trier of fact as to a plaintiff's entitlement to maintenance and cure benefits.[121] Applying this idea in *Johnson v. Marlin Drilling Co.*, the Fifth Circuit determined that where "there was extensive controversy among the medical opinions," an unequivocal medical determination did not exist and an evidentiary hearing was appropriate.[122]

In this case, there appears to be a disputed issue of fact among the two physicians, Dr. Dietze and Dr. Awasthi, on whether thoracic spinal fusion surgery is medically necessary. Plaintiff urges the Court to mirror the decision of a federal district court in Washington in *Gouma v. Trident Seafoods, Inc.*, and follow the opinion of Plaintiff's physician.[123] However, blind reliance on Plaintiff's physician's recommendation seems inappropriate here. In *Gouma*, the court determined

---

[117] *Barto v. Shore Const., L.L.C.*, 801 F.3d 465, 476 (5th Cir. 2015) (quoting *Pelotto*, 604 F.2d at 400; *Johnston v. Tidewater Marine Serv.*, 116 F.3d 478, at *2 (5th Cir. 1997) (per curiam)).

[118] *Id.*

[119] *Johnson*, 893 F.2d at 79.

[120] *Id.*

[121] *Tullos v. Resources Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985).

[122] *Johnson*, 893 F.2d at 79.

[123] *See Gouma*, 2008 WL 2020442, at *2.

that the defendant could not defeat its cure obligation simply by finding "a physician who would pronounce the seaman at maximum medical cure."[124] The court found that where an issue of fact remained on the necessity of the proposed treatment, it would follow *Vaughan* in resolving all doubts in favor of the plaintiff, ruling that he would continue receiving cure until trial.[125]

In this case, L&M has not simply found a physician to disagree with Dr. Dietze. It is Plaintiff's physician, Dr. Dietze, that has rendered conflicting opinions. Until May 2018, Dr. Dietze and Dr. Awasthi agreed that Plaintiff did not need thoracic spinal fusion surgery. Further, Dr. Dietze, not Dr. Awasthi, was the physician that initially declared Plaintiff as having reached maximum medical improvement.[126] Only on May 16, 2018, did Dr. Dietze recommend thoracic spinal fusion surgery. Therefore, unlike in *Gouma*, the dispute before the Court is not simply L&M presenting a physician who disagrees with Dr. Dietze; it is a matter of Dr. Dietze's change in opinion regarding the necessity of surgery and his now conflicting views with Dr. Awasthi.

In addition to whether thoracic surgery is required, there is also a disputed issue on whether such a surgery would be considered curative or merely palliative. Because both issues affect whether L&M is obligated to pay cure to finance the surgery, summary judgment is denied. The Fifth Circuit has stressed, however, that the importance of maintenance and cure to injured seamen can warrant an evidentiary hearing.[127] Specifically, the court in *Johnson* remanded the case for an evidentiary hearing on the conflicting opinions of the physicians.[128] Accordingly, this Court will next consider whether it should grant an expedited hearing on the issue of cure.

---

[124] *Id.*

[125] *Id.*

[126] Rec. Doc. 115-4 at 33–34.

[127] *Id.*

[128] *Id.*

### B.  Expedited Hearing

Plaintiff contends that if the Court denies summary judgment, then the Court should set an expedited hearing on the issue of cure. The Fifth Circuit has declared that if a seaman has a claim for maintenance and cure joined with a Jones Act claim, the seaman may "ask for severance of the maintenance claim and an expedited trial of it by the court."[129] In deciding whether to sever a claim for maintenance and cure, other judges in the Eastern District of Louisiana have considered "the plaintiff's interest in an expediting[sic] trial of these issues, the proximity of the scheduled trial date, whether plaintiff has requested a jury trial, and whether the nonmoving party opposes the motion."[130] Courts have also considered "whether a delay in plaintiff's surgery would make determination of damages in the Jones Act case speculative and whether the same experts would have to testify in both trials."[131] Courts have denied severance of maintenance and cure where a plaintiff requested a jury trial, trial was within four months of the motion for expedited trial, both the expedited trial and main trial would involve the same witnesses, and the defendant opposed severance.[132] Courts have also found that where "a substantial period of time has passed since the injury…it is unlikely that a delay of five more months will alter the outcome of any surgery."[133]

In this case, trial is set for April 15, 2019, five months from the date of the request for severance. Neither of the parties has requested a jury trial and L&M has stated that it does not

---

[129] *Tate v. American Tugs, Inc.*, 634 F.2d 869, 871 (5th Cir. 1981).

[130] *Hampton v. Daybrook Fisheries, Inc.*, No. 01-1913, 2002 WL 1974107, at *2 (E.D. La. Aug. 27, 2002) (citing *Martinez v. Edison Chouest Offshore, Inc.*, 2001 WL 6726 (E.D.La.2001); *Charpentier v. Blue Streak Offshore, Inc.*, 1996 WL 383126 (E.D.La.1996)).

[131] *Cooper v. Nabors Offshore, Inc*., No. 03-0344, 2003 WL 22174237, at *1 (E.D. La. Sept. 9, 2003).

[132] *Hampton v. Daybrook Fisheries, Inc.*, No. 01-1913, 2002 WL 1974107, at *2 (E.D. La. Aug. 27, 2002); *Martinez v. Edison Chouest Offshore, Inc.*, 2001 WL 6726 (E.D.La.2001); *Charpentier v. Blue Streak Offshore, Inc.*, 1996 WL 383126 (E.D.La.1996); *Marine Drilling Management Co. v. Scott,* 2003 WL 133218 (E.D. La. Jan. 15, 2003).

[133] *Marine Drilling,* 2003 WL 133218.

oppose an expedited hearing on this singular issue. Thus, an expedited hearing would not be overly burdensome on the Court. The Court will sever the issue of cure and set a hearing solely on the issue of whether thoracic spinal fusion surgery is necessary.

## C.    *Independent Medical Expert*

L&M argues that because Dr. Dietze and Dr. Awasthi have conflicting opinions regarding the necessity of thoracic spinal surgery, the Court should appoint an expert witness to provide a third opinion.[134] Plaintiff cited several district court cases that denied the appointment of a medical expert under the rationale that "Rule 706 should be reserved for exceptional cases in which the ordinary adversary process does not suffice."[135] However, these cases are distinguishable from the facts here. In *Hunt* and *Leblanc*, other judges in the Eastern District of Louisiana denied appointing an expert because the defendant sought to bypass the adversary process by failing to communicate with the plaintiff and not requesting that the defendant's independent expert examine the plaintiff before the defendant filed a motion with the court.[136] Here, L&M has engaged in the adversary process since Plaintiff's initial examination by L&M's expert, Dr. Awasthi, on July 6, 2017.[137] Dr. Awasthi has physically examined Plaintiff twice and reviewed additional scans after these examinations.[138] Therefore, L&M has not avoided the adversary process in attempting to resolve the issue of conflicting medical opinions.

---

[134] Rec. Doc. 121.

[135] *Hunt v. R & B Falcon Drilling USA, Inc.*, No. 99-1685, 2000 WL 1838327, at *1 (E.D. La. Dec. 12, 2000); *see also LeBlanc v. PNS Stores, Inc.*, No. CIV. A. 96-2764, 1996 WL 607017, at *1 (E.D. La. Oct. 21, 1996) (noting that "the enlistment of court-appointed experts pursuant to Federal Rule of Evidence 706 is not commonplace").

[136] *See Hunt*, 2000 WL 1838327, at *1; *LeBlanc*, 1996 WL 607017, at *1.

[137] Rec. Doc. 115-1 at 3.

[138] *Id.*

This case is also distinguishable from *Brown v. Cenac Towing*.[139] In *Brown*, another district court judge in the Eastern District of Louisiana ruled that the appointment of an independent expert was unwarranted because the court was unconvinced by the defendant's arguments that the medical evidence was confusing, conflicting, and contradictory.[140] The court specifically noted that the parties' briefs highlight[ed] not contradictory medical evidence, but contradictory factual evidence regarding the medical advice and treatment [plaintiff had] received."[141] In contrast, the parties here present two physicians, one of whom changed his opinion, whose medical opinions are contradictory on the necessity of thoracic spinal fusion surgery. Where two medical experts continue to disagree, the Court will be aided by a third, independent opinion. Accordingly, the Court will appoint an independent medical expert to provide an opinion on whether Plaintiff requires thoracic spinal fusion surgery.

## D.    *Punitive Damages*

In addition to requesting summary judgment on L&M's obligation to pay cure, Plaintiff also asserts that this Court should "award punitive damages arising out of Defendant's unreasonable, arbitrary, and capricious failure to provide [Plaintiff] with necessary cure herein."[142] In *Tullos v. Resources Drilling, Inc.*, the Fifth Circuit acknowledged that though "punitive damage claims in the context of the denial or termination of maintenance and cure at one time was limited only to reasonable attorneys' fees," "subsequent cases 'have established that, in addition to…attorneys' fees, punitive damages for [willful and arbitrary] refusal are available under general maritime

---

[139] 2009 WL 3378658, at *1.

[140] *Brown*, 2009 WL 3378658, at *2.

[141] *Id.*

[142] 750 F.2d at 388.

law.'"[143] "Examples of employer behavior that could merit punitive damages have included (1) laxness in investigating a claim; (2) termination of benefits in response to the seaman's retention of counsel or refusal of a settlement offer; (3) failure to reinstate benefits after diagnosis of an ailment previously not determined medically."[144] The Fifth Circuit has added "'that the willful, wanton and callous conduct required to ground an award of punitive damages requires an element of bad faith.'"[145]

Plaintiff alleges that L&M has refused to pay cure for his medically necessary thoracic surgery. L&M asserts that it has "acted in good faith at all times and actively investigated and timely paid [Plaintiff's] maintenance and cure claim."[146] L&M insists that it authorized cure on Plaintiff's lumbar surgery and is not acting in bad faith by refusing to pay for the thoracic surgery because physicians conflict on whether thoracic surgery is needed. The ongoing dispute regarding the medical necessity of the thoracic spine surgery does not appear to be an "arbitrary" reason for refusing cure. Furthermore, Plaintiff has not presented any evidence to show that L&M acted in bad faith. Therefore, Plaintiff's request for summary judgment on the issue of his entitlement to punitive damages is denied.

---

[143] *Id.* (quoting *Holmes v. J. Ray McDermott & Co.*, 734 F.2d 1110, 1118 (5th Cir. 1984)).

[144] *Id.*

[145] *Id.* (quoting *Harper v. Zapata Off-Shore Co.*, 741 F.2d 87, 88 (5th Cir. 1984)).

[146] Rec. Doc. 117 at 17.

## V. Conclusion

A hearing regarding the motion for summary judgment and motion to appoint an independent expert was held on December 19, 2018. Plaintiff argued that thoracic fusion surgery is medically necessary as part of L&M's cure obligation. L&M asserted that a genuine issue of fact exists because two physicians conflict on whether Plaintiff requires thoracic surgery and Plaintiff's own physician changed his earlier recommendation that Plaintiff had reached maximum medical improvement and did not require surgery. L&M asserted that an independent medical expert would assist in resolving the issue. For the reasons discussed above, the Court finds that genuine issues of material fact exist regarding the issue of cure. Therefore, the Court denies Plaintiff's request for summary judgment on the issue of cure. However, the Court will expedite a hearing on the issue of whether Plaintiff's thoracic spinal fusion surgery is necessary. Furthermore, the Court will appoint an independent medical expert to evaluate Plaintiff. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Toby Martin's "Motion for Partial Summary Judgment and/or Motion to Compel on the Issue of Cure and, in the Alternative, Motion for Expedited Trial on the Issue of Cure"[147] is **GRANTED IN PART** and **DENIED IN PART**. The motion for summary judgment is **DENIED** and the motion for expedited hearing on the issue of cure is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant L&M Botruc Rental, LLC's "Motion to Appoint Independent Medical Expert"[148] is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties are to jointly submit the name of one proposed expert to the Court within seven days of this Order. If the parties cannot agree on an

---

[147] Rec. Doc. 115.

[148] Rec. Doc. 121.

24

expert, each party shall submit the names of three proposed experts and the sources from which they identified the experts.

**IT IS FURTHER ORDERED** that an expedited hearing on the issue of whether Plaintiff's thoracic spinal fusion surgery is necessary is set for February 15, 2019 at 10:00 AM.

**NEW ORLEANS, LOUISIANA,** this __3rd__ day of January, 2019.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**